Ruth M. CRAWFORD, Executrix of the Estate of Percy B. Crawford, deceased, Plaintiff,

v.

COLBY BROADCASTING CORPORATION and Julian Colby, Defendants.

No. 65 C 1934.

United States District Court
N. D. Illinois, E. D.

Oct. 5, 1966.

Morgan, Lewis & Bockius, Philadelphia, Pa., Spray, Price, Hough & Cushman, Chicago, Ill., for plaintiff.

M. Robert Sturman, Bernard G. Sang, Vincent J. Carney, Chicago, Ill., for Colby Broadcasting Corp. and Julian Colby.

### MEMORANDUM ON DEFENDANTS' MOTION TO DISMISS

ROBSON, District Judge.

This is a civil antitrust, Sherman Act suit (15 U.S.C. § 15), and also a suit brought under the Indiana Antitrust Act (5 Burns Ind.Stats.Ann. § 23–122) wherein plaintiff's late husband is alleged to have entered into a contract on May 6, 1959, to purchase the FM station operated in Indiana by defendant company, which also operated an AM station. Paragraph 9 of the 1959 contract provided that "For a period of ten years following consummation, neither Seller* nor any company or group in which he is a principal shall compete for advertisers, except churches, with Station WJOB in Lake and Porter Counties, Indiana; Will County, Illinois and in the

* Typographical error. Word should be "Buyer."

communities of Chicago Heights, Harvey, Dolton and Riverdale, Illinois."

An amendment to the contract, dated May 25, 1962, by plaintiff and defendant company, by its president, defendant Colby, *deleted* said Paragraph 9.

The instant suit was filed November 19, 1965, by the widow and executrix of The Estate of Percy B. Crawford. Defendant Colby Broadcasting Corporation is the successor by merger of the South Shore Broadcasting Corporation of which the individual defendant is president, and a substantial stockholder.

The complaint states the purchaser was to change its station's name to WYCA. It is asserted the restrictive covenant not to compete in advertising throughout almost all of WJOB's broadcast pattern in Indiana and Illinois so unreasonably limited WYCA's opportunity to obtain advertising revenue as to render WYCA's continued existence impossible without release of the covenant. To secure such release, WYCA was compelled to make onerous additional payments, a percentage of WYCA's broadcasting revenues with a minimum monthly payment. Plaintiff alleges she has been unlawfully deprived of advertising revenues of $50,000 and has been forced to pay to South Shore Broadcasting Corporation $28,666.66 and will be forced to pay not less than $31,055.50.

There are several bases to the motion to dismiss:

1. The suit is barred by the four-year statute of limitations, which period began to run from the date of the original contract, May 6, 1959.

2. The restriction of Paragraph 9 of the contract is a reasonable and usual one made on the sale of a business.

3. If Paragraph 9 is invalid, the invalidity was cured by the amendment deleting it from the agreement, and is an accord and satisfaction for which consideration was paid for it and other promises.

4. The parties must be deemed in *pari delicto* if the original agreement be deemed invalid, and is therefore unenforceable. Further, defendants maintain that the individual defendant cannot be held liable simply by virtue of his corporate capacity.

Plaintiff counters those contentions with these positions:

1. The suit was filed within four years of the execution of the amendment; there were continuing damages to the date of the suit. Even if damages were to be held barred, in any event she was entitled to an injunction against future enforcement of the agreement.

2. The restriction was not a reasonable and usual one because it was broader than the business transferred.

3. The amendment deleting Paragraph 9 did not cure the antitrust violation but involved plaintiff more deeply by exacting more consideration.

4. This is not the kind of a case where parties are barred from suing by the *pari delicto* doctrine because here the public as well is involved in that the contract dealt with interstate communications, and advertising thereon, restricting competition.

5. The individual defendant is liable because he is the one who perpetrated the amendment to the contract.

The gist of the controversy seems to be plaintiff's desire to be relieved of liability under the original contract with its allegedly restrictive covenant, and under the amendment, deleting that covenant and substituting a sliding scale of royalty payments based on broadcasting revenues. The basis for the asserted right to relief is the alleged violation of the federal and Indiana antitrust acts, originally by said Paragraph 9, and later by payments required in order to be relieved of the restrictive covenant. It is notable that plaintiff proceeded under the original contract for three years, and under the amendment for an additional three years, before she deemed the contract illegal under the antitrust laws.

The court is of the opinion that the motion of the defendants to dismiss is soundly premised, predicated on the re-

cent decision of the Court of Appeals in Crest Auto Supplies, Inc. v. Ero Manufacturing Company, 7 Cir., 360 F.2d 896 (1966).

■ The plaintiff's intestate entered into the contract *voluntarily* yet recovery is now sought on the basis that the contract contains provisions violative of the antitrust acts. The mere allegation in the complaint that the contract was "extracted" and similar verbiage, in alleging that Crawford could not compete for advertising with the defendants, which was allegedly an unreasonable restrictive covenant, is not tantamount, as plaintiff urges, to an allegation that he was *forced* to accept the conditions imposed. While no evidence has been adduced no depositions or affidavits filed, and a motion to dismiss admits all well-pleaded facts, nevertheless, the pleadings themselves clearly disclose there is here an attempt to recover on a contract voluntarily entered into, which recovery is precluded by the long-established *pari delicto* doctrine, as most recently enunciated in the *Crest* case, supra.

The court in the *Crest* case made many observations pertinent to the disposition of this case. Thus it was said, at 900:

"* * * [P]roof of subjective states is not involved, and the only alleged genuine issue is whether the court could decide that the parties were *in pari delicto*.

"We see no merit in plaintiffs' contention that the question of *pari delicto* is always one of fact which could not on this record be decided as a matter of law, but instead must be determined at a trial. Plaintiffs refer to a 'feeling' in 'all the Courts' against the *pari delicto* rule in private anti-trust cases. The only animus we detect in the courts on the *pari delicto* question is directed at protecting those who are coerced into illegal agreements * * * [Citing cases.]. * * * But where a plaintiff participates freely in the alleged anti-trust conduct, the *pari delicto* rule precludes recovery. * * *

As Judge Soper said * * * the doctrine that a plaintiff who is a voluntary party to the allegedly illegal agreement which forms the basis for the anti-trust suit cannot recover thereon was 'firmly established in earlier cases,' and still remains to be given effect in appropriate actions.

"* * * There is no allegation or inference that plaintiffs were coerced into the franchises, or that business necessity amounting to coercion compelled their acceptance of the agreements now complained of. Exactly the opposite appears. * * * From the depositions it also appears that the plaintiffs were seeking business opportunities, looked into the proposition offered by the defendant, and * * * 'desirous of bettering his own economic position,' embraced it."

The instant complaint alleges an agreement assigning a license to an FM radio station for a valuable consideration to plaintiff's decedent, and extracted a covenant not to compete for advertising, except churches, throughout the territory, and unreasonably limited its opportunities to obtain advertising revenues as to render its continued existence impossible without release from the restrictive covenant. To secure the release, the estate was compelled to make additional payments, all of which was done to drive plaintiff's station out of business.

■ As pointed out heretofore, decedent was not coerced into the original agreement, in the legal sense used in the *Crest* opinion. It was his voluntary act. The revenues were insufficient, after three years of the contract, so it was amended to delete the "restrictive covenant" and provided for other measure of payment. It would appear to the court that the allegations state merely a venture voluntarily assumed which after a few years proved unprofitable and a substitute contract made which also proved unprofitable, and plaintiff is understandably trying to be relieved of the obligations assumed on the legal theory of unlawful antitrust provisions. As the court

reads the many *pari delicto* decisions, the type of contract here disclosed under the conditions alleged does not amount to antitrust violations and the defendant's motion to dismiss is therefore granted.